21-MJ-5454-JGD

**AFFIDAVIT OF SPECIAL AGENT CHRISTINA ROSEN**
**IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Special Agent Christina Rosen, being duly sworn, hereby state the following:

1. I am employed as a Special Agent with the United States Department of Labor, Office of Inspector General, Office of Investigations ("DOL-OIG-OI") in Boston, Massachusetts. I have been employed by the United States government as a Special Agent since October 2007. I am a graduate of the Criminal Investigator Training Program of the Federal Law Enforcement Training Center in Glynco, Georgia and have received extensive training in criminal investigation procedures and criminal law. In 2005, I graduated from Northeastern University with a bachelor's degree in criminal justice. In 2006, I graduated from Boston University with a master's degree in criminal justice. My responsibilities as a Special Agent with DOL-OIG-OI include investigating fraud, waste, and abuse of Department of Labor programs, employees, and departments.

2. During my tenure as a Special Agent, I have conducted investigations of several types of criminal activity, including work visa fraud, unemployment insurance fraud, false claims fraud, employee benefits fraud, identity theft, and money laundering. During the investigation of these cases, I have participated in the execution of search and arrest warrants and have seized evidence as evidence, fruits, and/or instrumentalities of violations of federal law.

**PURPOSE OF AFFIDAVIT**

3. Along with other members of federal and state law enforcement, I am investigating Clark Grant ("GRANT") for various federal crimes, including, but not limited to, wire fraud, in violation of Title 18, United States Code, Section 1343; theft of government funds, in violation of Title 18, United States Code, Section 641; and false statements on loan and credit application, in violation of Title 18, United States Code, Section 1014.

4. This affidavit is submitted in support of a criminal complaint and arrest warrant charging GRANT with wire fraud, in violation of Title 18, United States Code, Section 1343, and false statements on loan and credit application, in violation of Title 18, United States Code,

Section 1014. As set forth below, I have probable cause to believe that, from on or about May 19, 2020 through in or around September 2021, GRANT perpetrated a scheme to fraudulently obtain tens of thousands of dollars in pandemic unemployment benefits and that in or around May 2021 through in or around July 2021 GRANT knowingly made false statements in order to obtain a mortgage for a residence in Massachusetts.

5. The facts stated herein are based on my own personal involvement in the below-described investigation, as well as from information provided by other law enforcement officers and from certain records. This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and arrest warrant and does not set forth all of my knowledge about this matter.

**BACKGROUND**

6. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was signed into law. The CARES Act created a new temporary federal unemployment insurance program called Pandemic Unemployment Assistance ("PUA"). Generally, PUA provides unemployment insurance benefits for individuals (i) who are not eligible for other types of unemployment (e.g., people who are self-employed, independent contractors, gig economy workers); and (ii) who are otherwise unable to work but are prevented from doing so because of the COVID-19 pandemic.

7. The Massachusetts Department of Unemployment Assistance ("DUA") administers and manages the PUA program in the Commonwealth of Massachusetts. Here, the PUA minimum weekly benefit allowance was $267. The PUA weekly benefit allowance could increase but could not be more than Massachusetts's maximum weekly benefit rate for regular unemployment benefits, or $855.[1]

8. The CARES Act also created a new temporary federal program called Federal Pandemic Unemployment Compensation ("FPUC") that provides an additional $600 weekly

[1] Prior to October 4, 2020, the maximum benefit amount for both unemployment insurance and PUA benefits in Massachusetts was $823.

benefit to those eligible for PUA and/or regular unemployment insurance. Claimants were eligible to receive FPUC monies in addition to the PUA or unemployment insurance benefits from February 8, 2020 to July 25, 2020.

9. As of August 1, 2020, through September 5, 2020, PUA and unemployment insurance claimants were also eligible to receive Federal Lost Wages Assistance ("FLWA") in the amount of $300 per week, funded by the Federal Emergency Management Agency.

10. A summary chart of the above benefits is as follows (all figures approximate):

| **State/Federal Benefit** | **Weekly Range** | **Application Requirements** |
|---|---|---|
| Unemployment Insurance | $52-$855 | SSN; DOB; Address; U.S. citizen or work authorization; willing and available to work; no fault unemployment; wages reported by employer to DUA; payment preference |
| Pandemic Unemployment Assistance (PUA) | $267-$855 | SSN; DOB; Address; U.S. citizen or work authorization; willing and available to work; eligible under PUA guidelines; payment preference |
| Federal Pandemic Unemployment Compensation (FPUC) | $600 | Must have an approved unemployment insurance or PUA claim |
| Federal Lost Wage Assistance (FLWA) | $300 | Must have an approved unemployment insurance or PUA claim |

11. As part of the PUA application process, a claimant was required to provide their first and last name, Social Security number ("SSN"), date of birth, and home address. The claimant had to indicate whether they wanted to receive benefits via direct deposit or debit card. In addition, the claimant was required to provide a phone number and an email address to be used by DUA to provide updates, contact the claimant, and/or for authentication purposes. The email address was also used by the claimant to access the PUA claim account and, if necessary,

reset their claim account password. A claimant could choose one of three ways to meet DUA's two-factor authentication requirement: SMS text message, email, or authentication app.[2]

12. PUA claims submitted via DUA were processed via servers located in Colorado. PUA claims were frequently submitted via the internet, and I understand that individuals who submitted PUA-related information to DUA via the internet caused wires to be transmitted to and/or from these Colorado-based servers.

13. Before receiving PUA benefits via DUA, a claimant was required to verify their identity, which involved personal identifying information, internet protocol address, email, and/or bank account information previously used with either the Massachusetts Department of Revenue and/or the Massachusetts Registry of Motor Vehicles. If the verification requirements were not met, an "ID verification" was placed on a claim. To overcome this, a claimant had to provide proof of SSN, identification, and address.

## STATEMENT OF PROBABLE CAUSE

### A. The Pandemic Unemployment Wire Fraud Scheme

14. Since at least 2018 and continuing to the present, Clark GRANT, a resident of Massachusetts, has been employed by a company that does business in interstate commerce (the "Company"). Records obtained from the Company indicate that GRANT worked in "Position 1" until in or around July 2021, at which time he was promoted to "Position 2." At several points during his employment at the Company, GRANT received pay raises, including in or around August 2020 and in or around July 2021. Employment records indicate that, throughout the COVID-19 pandemic, GRANT was employed by and working full-time for the Company.

15. As described in more detail below, my investigation has revealed that, starting in or around May 2020, GRANT engaged in a scheme to fraudulently obtain PUA benefits

[2] Two-factor authentication is a process that adds an extra layer of security for logging into online accounts. As it is frequently implemented, a user must first enter a username and password for a particular account. Rather than gaining immediate access, however, the user is then required to provide another piece of information, such as a security code or PIN number that can be sent to the user by text message, email, or app during the login process.

compensating him for a period dating back to March 29, 2020 and continuing through in or around September 2021.

16. In order to obtain PUA benefits, GRANT attested, under the pains and penalties of perjury, that he did not work (full-time or part-time) during the relevant period, did not earn any other income, and was unable to work due to COVID-19 because he is "self-employed (including an independent contractor and gig worker) and experienced a significant reduction of [his] customary or usual services because of the COVID-19 public health emergency."

17. In total, GRANT wrongfully obtained approximately $67,950 in benefits designed for people who were unable to work due to the COVID-19 pandemic ($45,150 in PUA; $21,000 in FPUC; and $1,800 in FLWA), all while collecting his full salary as an employee of the Company.

***GRANT's Initial Application – May 19, 2020***

18. On or about May 19, 2020, a PUA claim (A00-000-0438-1075) was filed electronically through the DUA portal with GRANT's name, Social Security number (xxx-xx-8651), date of birth (xx/xx/1983), and other personal identifying information, including his personal email address, his cell phone number, his Massachusetts driver's license number Sxxxx8990, and his then-home address in Boston. The DUA portal utilized two-factor authentication, through which a claimant (i) logged into the portal with a username and password, and then (ii) also received a code, via SMS text message or email, as a second layer of identity verification. For GRANT's claim on May 19, 2020, two-factor authentication was used via GRANT's cell phone (xxx-xxx-2931), meaning that, as part of his login to the DUA portal, an SMS text message was sent to his cell phone to be then entered into the online portal to complete his login.[3]

[3] Based on my investigation, I believe that GRANT's application for PUA benefits, submitted via the internet and processed via DUA's Colorado-based servers, involved the transmission of interstate wires.

19. As submitted, the PUA claim asserted that GRANT's employment was first affected by the COVID-19 pandemic on March 20, 2020 and certified the following: that GRANT was diagnosed with COVID-19 or was experiencing symptoms of COVID-19; that GRANT was providing care for a family or household member who was diagnosed with COVID-19; and that due to being self-employed, an independent contractor, or a gig worker COVID-19 severely limited his ability to perform his normal work.

20. On his initial application, GRANT certified that he had been able and available to work between March 29, 2020 and May 16, 2020 but that he had not earned more than $89 in any work week during that period.[4]

21. In addition, GRANT certified on his initial PUA application that he had worked in Massachusetts in 2019, made over $5,100 in employment income for which taxes were deducted from paychecks in 2019, and had already been denied an unemployment claim.[5] On the application, GRANT claimed that his total income in 2019 was $60,000 and that he had one dependent who had not already been listed on another unemployment claim.

22. On his initial PUA application, GRANT requested that his PUA benefits be directly deposited into a Bank of America checking account ending with the numbers -9180.

23. Based on the information submitted to DUA, GRANT's PUA claim was approved for a weekly benefit of $577, a weekly dependency allowance of $25, and any applicable FPUC benefits.

---

[4] DUA allowed for claimants to apply for and receive benefits dating back to the onset of the pandemic in March 2020. For applications such as GRANT's and as described herein, the initial application includes weekly certifications for the period dating back to March 2020 during which the applicant was purportedly unable to work.

[5] According to records obtained from DUA, GRANT had not submitted an unemployment claim in 2020 and had last applied for unemployment insurance benefits in 2016.

***GRANT's Weekly Certifications***

24. To continue to receive PUA benefits, recipients were required to certify on a weekly basis that they still qualified for benefits – that is, that they were still unable to work, full-time or part-time, due to the COVID-19 pandemic.

25. When GRANT submitted his initial application on May 19, 2020, GRANT certified that for each week prior, starting for the week of March 29, 2020, he had been unable to work due to the COVID-19 pandemic.

26. Subsequently, GRANT submitted the required certifications through the DUA portal system on a weekly basis from on or about May 24, 2020 through on or about September 5, 2021.

27. In each of these certifications, GRANT attested, under the pains and penalties of perjury, that he did not work (full-time or part-time) during the relevant period, did not earn any other income, and was unable to work due to COVID-19 because he is "self-employed (including an independent contractor and gig worker) and experienced a significant reduction of my customary or usual services because of the COVID-19 public health emergency."

28. For example, on May 24, 2020, GRANT certified that for the benefit period ending on May 23, 2020, he had been unable to work, full-time or part-time, due to the COVID-19 pandemic and had not earned any other income during the relevant period. Company employment records, including time sheets, indicate that GRANT worked throughout the week ending May 23, 2020.

29. As another example, in August 2020, GRANT certified that he had been unable to work, full-time or part-time, due to the COVID-19 pandemic and had not earned any other income during the relevant periods, submitting weekly certifications on August 3, 2020, August 9, 2020, August 16, 2020, August 23, 2020, and August 31, 2020. Company employment records, including time sheets, indicate that GRANT was employed throughout August 2020 and that GRANT was, in fact, promoted and given a pay raise (of almost $5,000 annually), effective on August 3, 2020.

30. Likewise, in July 2021, GRANT certified that he had been unable to work, full-time or part-time, due to the COVID-19 pandemic and had not earned any other income during the relevant periods, submitting certifications on July 4, 2021, July 11, 2021, July 18, 2021, and July 25, 2021. Company employment records, including time sheets, indicate that GRANT worked throughout July 2021 and that GRANT was again promoted and given a pay raise (of almost $7,000 annually) on July 7, 2021.

31. From on or about May 24, 2020 through on or about September 5, 2021, GRANT certified on approximately 68 different occasions that he had been unable to work, full-time or part-time, due to the COVID-19 pandemic and had not earned any other income during the relevant period.

***Identity Verification Request***

32. On or about September 25, 2020, DUA placed an "Identity Verification Issue" on GRANT's PUA claim and requested additional information from GRANT relating to his identity.

33. In response to this notification, on or about September 30, 2020, GRANT uploaded four images to the DUA system, including photos of the front and back of his Massachusetts driver's license, number Sxxxx8990, as well as of the front and back of his Social Security card, bearing the name Clark A. Grant and SSN xxx-xx-8651.

***GRANT's Sham "Independent Contractor Agreement"***

34. On or about March 23, 2021, DUA issued an "Employment Substantiation Request" relating to GRANT's PUA claim requiring GRANT to provide additional information and/or documentation with respect to his employment and claim for PUA benefits.[6]

35. On or about June 20, 2021, GRANT responded to DUA's employment substantiation request by (i) filling out an online form indicating that he was self-employed, and

[6] On or about March 22, 2021, DUA put Employment Substantiation Requests on every active PUA claim. If a claimant was unable to provide proof that they were eligible to receive PUA benefits, DUA would disqualify the entire claim.

(ii) uploading two pages of a document with the title, "Independent Contractor Agreement." The document purports to be an agreement between GRANT and a named entity (the "Entity") with an address in Dorchester, MA (the "Dorchester Address") for "facilities management" services.

36. DUA reviewed the document and made the following note, "Contract does not provide employer and date. Earnings before claim not reported on 1099 and IRS forms." On or about September 2, 2021, DUA re-sent its fact-finding request to GRANT with a fourteen-day deadline for GRANT to respond with additional information.

37. On September 16, 2021, GRANT uploaded the full four pages of the document purporting to be the "Independent Contractor Agreement." The four-page version includes a signature page with a signature by GRANT and the name and signature of someone purporting to be a representative of the Entity (the "Representative"). A query of both public and law enforcement databases failed to locate anyone in the United States with the Representative's name.

38. As confirmed by the U.S. Postal Service, the address listed for the Entity in the purported agreement, the Dorchester Address, does not exist. That is, there is no property located or listed at the Dorchester Address.

39. Based on this investigation, as well as my training and experience, I believe that this Independent Contractor Agreement is a sham contract fabricated by GRANT and submitted to DUA in order to further his PUA benefits fraud.

***GRANT's Full-Time Employment Throughout the Pandemic***

40. According to records obtained from the Company, GRANT was hired in July 2018 as a full-time employee with the title of Position 1 being paid approximately $22.01 per hour. As of July 2021, GRANT was a full-time employee with the title of Position 2 being paid approximately $33.29 per hour ($69,243 annually, not including overtime).

41. According to GRANT's 2020 IRS Form 1040 (individual income tax), filed on or about March 9, 2021, GRANT reported that in 2020 he received $60,850 in wages from the Company working in Position 1.

42.     According to DUA records, GRANT's PUA claim listed one bank account for benefits to be deposited: a Bank of America checking account ending with the numbers -9180. Records obtained from Bank of America confirm that this account is registered to GRANT, with SSN xxx-xx-8651, DOB xx/xx/1983, and a listed address in Boston at which GRANT was known to have previously resided.

43.     Records obtained from Bank of America confirm that GRANT's salary from the Company was directly deposited into his account, ending in -9180, throughout the period during which he was collecting PUA benefits. For example, from March 20, 2020 to August 24, 2021, GRANT's Bank of America statements show approximately 74 deposits from the Company as GRANT's employer and approximately 78 PUA benefits payments. In many instances, the deposits from the Company and for PUA benefits clear within days of each other.

44.     Statements from the Bank of America account reveal that PUA direct deposits were made to GRANT's -9180 account starting in or around May 2020. For example, GRANT's Bank of America (-9180) statement for the period May 22, 2020 to June 23, 2020 (the "June 2020 Statement") reveals eleven deposits from DUA with the description "CARES ACT", each for $1,202.00 and totaling $13,222.00. The June 2020 Statement also reveals five deposits from the Company with the description "PAYROLL", totaling $3,616.60.

45.     GRANT's Bank of America (-9180) statement for the period June 24, 2020 to July 24, 2020 (the "July 2020 Statement") reveals five deposits from DUA with the description "CARES ACT", totaling $6,010.00. The July 2020 Statement also reveals four deposits from the Company with the description "PAYROLL", totaling $2,767.72.

46.     GRANT's Bank of America (-9180) statement for the period August 25, 2020 to September 23, 2020 (the "September 2020 Statement") revealed eleven deposits from DUA with the description "CARES ACT", totaling $4,810.00. The September 2020 Statement also revealed four Company deposits, described as "PAYROLL", totaling approximately $2,624.55:



BANK OF AMERICA

CLARK GRANT | Account # [redacted] 9180 | August 25, 2020 to September 23, 2020

## Deposits and other additions

| Date | Description | Amount |
|---|---|---|
| 08/26/20 | MA DUA DES:CARES ACT ID[redacted] INDN:GRANT, CLARK CO ID:CXXXXXXXXX PPD | 512.00 |
| 08/31/20 | [redacted] DES:PAYROLL ID[redacted] INDN:Grant Clark CO ID[redacted] PPD | 925.78 |
| [redacted] | [redacted] | [redacted] |
| 09/03/20 | MA DUA DES:CARES ACT ID[redacted] INDN:GRANT, CLARK CO ID:CXXXXXXXXX PPD | 512.00 |
| 09/03/20 | MA DUA DES:CARES ACT ID[redacted] INDN:GRANT, CLARK CO ID:CXXXXXXXXX PPD | 255.00 |
| 09/03/20 | MA DUA DES:CARES ACT ID[redacted] INDN:GRANT, CLARK CO ID:CXXXXXXXXX PPD | 255.00 |
| 09/03/20 | MA DUA DES:CARES ACT ID[redacted] INDN:GRANT, CLARK CO ID:CXXXXXXXXX PPD | 255.00 |
| 09/04/20 | [redacted] DES:PAYROLL ID[redacted] INDN:Grant Clark CO ID[redacted] PPD | 602.19 |
| [redacted] | [redacted] | [redacted] |
| 09/10/20 | MA DUA DES:CARES ACT ID[redacted] INDN:GRANT, CLARK CO ID:CXXXXXXXXX PPD | 512.00 |
| 09/11/20 | MA DUA DES:CARES ACT ID[redacted] INDN:GRANT, CLARK CO ID:CXXXXXXXXX PPD | 255.00 |
| 09/11/20 | MA DUA DES:CARES ACT ID[redacted] INDN:GRANT, CLARK CO ID:CXXXXXXXXX PPD | 255.00 |
| 09/14/20 | [redacted] DES:PAYROLL ID[redacted] INDN:Grant Clark CO ID[redacted] PPD | 436.08 |
| 09/15/20 | MA DUA DES:CARES ACT ID[redacted] INDN:GRANT, CLARK CO ID:CXXXXXXXXX PPD | 255.00 |
| 09/16/20 | MA DUA DES:CARES ACT ID[redacted] INDN:GRANT, CLARK CO ID:CXXXXXXXXX PPD | 512.00 |
| 09/21/20 | [redacted] DES:PAYROLL ID[redacted] INDN:Grant Clark CO ID[redacted] PPD | 660.50 |

*continued on the next page*

## Deposits and other additions - continued

| Date | Description | Amount |
|---|---|---|
| [redacted] | [redacted] [redacted] | [redacted] |
| 09/23/20 | MA DUA DES:CARES ACT ID[redacted] INDN:GRANT, CLARK CO ID:CXXXXXXXXX PPD | 512.00 |
| **Total deposits and other additions** | | **$7,182.17** |

47. I have reviewed subsequent statements from GRANT's Bank of America (-9180) account, which confirm that, until at least August 2021, GRANT continued to receive deposits of PUA benefits from DUA with the description "CARES ACT", as well as payroll deposits from his full-time employer, the Company.

**B. <u>GRANT's False Statements on Loan and Credit Application</u>**

48. In or about May 2021, GRANT sought to purchase a residential property located in Massachusetts (the "MA Residence"), which was listed at a sale price of approximately $410,000. To purchase the property, GRANT applied for a mortgage loan with a mortgage company (the "Mortgage Co."), a Chicago-based mortgage lender that does business in interstate commerce.

49. Records obtained from Bank of America indicate that, in May 2021, GRANT's personal Bank of America account (-9180) had an approximate balance of less than $1,000.

50. To augment his financial assets, GRANT falsely listed as a personal asset a bank account on the mortgage application that was not a personal asset. Specifically, GRANT listed a Bank of America account ending with the numbers -0512 that, according to his application, contained $461,548.73. This account, however, did not belong and has never belonged to GRANT.

51. According to records obtained from Bank of America, the account ending with the numbers -0512 was registered in the name of a non-profit organization whose stated purpose was to reduce violence and provide community aid to disenfranchised communities (the "Non-Profit") and that had been founded by an associate of GRANT. GRANT served as an officer of the Non-Profit with the title of Director from 2017 to the present, according to Massachusetts Secretary of State records. Based on my training and experience, I believe that, as a Director of the Non-Profit, GRANT was aware that he could not claim the Non-Profit's funds as his personal assets.

52. Records obtained from the Mortgage Co. include Bank of America statements confirming a balance of over $447,000 in the Non-Profit account at or around the time of GRANT's mortgage application. It is my belief that these records were provided to the Mortgage Co. as supporting materials for GRANT's mortgage application.

53. On May 20, 2021, GRANT certified, electronically signed, and submitted the mortgage application, which included the Non-Profit bank account as a personal asset, to the

Mortgage Co. GRANT's signature followed an acknowledgement on the application that "[a]ny intentional or negligent misrepresentation of information may result in the imposition of: … criminal penalties on me including, but not limited to, fine or imprisonment or both under the provisions of Federal law (18 U.S.C. 1001 et seq.)."

54. The Mortgage Co., as part of its diligence process, obtained bank records for GRANT and the Non-Profit, as well as Massachusetts Secretary of State filings demonstrating that the Non-Profit was formed as a charity-based organization. After the Mortgage Co. obtained this information, records show that GRANT revised his loan application in July 2021 to omit the Non-Profit account from the application.

55. The Mortgage Co. identified other problems with GRANT's mortgage application. For example, records obtained by the Mortgage Co. during its diligence process showed that, in 2021, GRANT was receiving both a salary from his employer, the Company, as well as unemployment benefits from DUA (as discussed in detail above). On July 6, 2021, GRANT sent and electronically signed the following false explanation to the Mortgage Co.:

07062021

To Whom this concerns:

The MA DUA Unemployment deposits were due to the Cleaning contracts that were cancelled due to Covid-19.

DocuSigned by:
[signature] CAG 07-06-2021
3E52E0025D9F4B4...
Clark A Grant

56. GRANT was aware the July 6, 2021 letter was false because GRANT knew that the DUA payments were due to his scheme to defraud DUA, and not due to purported "Cleaning contracts." When the July 6, 2021 letter was found insufficient to satisfy lending officials at the Mortgage Co., on July 13, 2021, GRANT submitted his phony Independent Contractor Agreement, described above, as well as another letter containing false statements:

7/13/2021

Concerning the Cleaning contract that was offered to me during Covid – 19, They provided a contract but was never able to provide services to this company. Several attempts were made to contact them but I was unsuccessful.

DocuSigned by: CAG

Clark A Grant 07-13-2021

57. On or about July 21, 2021, the Mortgage Co. approved GRANT's mortgage application and authorized a mortgage loan in the amount of approximately $410,000.

## CONCLUSION

58. Based on the information described above, as well as my training and experience, I believe that (i) on or about May 19, 2020, Clark GRANT, having devised and intending to devise a scheme and artifice to defraud the DUA, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, to wit, Clark GRANT's initial PUA application, in violation of Title 18, United States Code, Section 1343; and (ii) on or about May 20, 2021, July 6, 2021, and July 13, 2021, Clark GRANT did knowingly make or cause to be made any false statement or report upon any

application, to wit, the May 20, 2021 application with false listing of Non-Profit assets as personal assets, the July 6, 2021 letter regarding DUA, and the July 13, 2021 letter regarding DUA, respectively, for the purpose of influencing in any way the action of the Mortgage Co., a mortgage lending business, in order to obtain a mortgage for the MA Residence.

Sworn to under the pains and penalties of perjury.

Christina Rosen

Special Agent Christina Rosen
U.S. Department of Labor
Office of Inspector General

Subscribed and sworn to via telephone in accordance with
Fed. R. Crim. P. 4.1 on October __, 2021. **Oct 18, 2021**

Judith Gail Dein

HON. JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS